IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 04-cv-1137-JLK (CBS)

HARTFORD UNDERWRITERS INSURANCE COMPANY, a Connecticut corporation, individually and as subrogee of EDWIN C. PATTEN, SR.,

     Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,

     Defendant

---

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND FOR ORAL ARGUMENT

---

KANE, J.

This declaratory judgment/equitable subrogation action arises out of a motor vehicle accident involving Plaintiff's insured, Edwin Patten, and two other vehicles on February 2, 2002. At the time, Patten was driving a company pick-up truck owned or leased by his employer, Danella Construction, and insured by Defendant Liberty Mutual Ins. Co. ("Liberty"). As of the date of the Complaint, one lawsuit had arisen as a result of the accident, and more were anticipated. Patten's personal insurer, Plaintiff Hartford Underwriters Insurance Co. ("Hartford"), paid on claims arising out of the accident and provided Patten with a defense to the lawsuit. Hartford then filed this action against Liberty, seeking a declaration that Liberty is the primary liability insurer for damages

1

arising out of the accident and seeking reimbursement for defense costs and payments made on behalf of Patten.

The matter is before me on Hartford's Motion for Summary Judgment Regarding Permissive Use and Damages (Doc. 11).  Hartford asserts there are no factual disputes that could undermine its entitlement to judgment and seeks an order declaring that (1) Danella's Liberty policy is the primary liability insurance for Patten for the February 5, 2002 accident; (2) Patten is an insured person under the Liberty policy; (3) Hartford is entitled to any payments it has made on behalf of Patten to claimants injured or damages as a result of the February 5, 2002, accident and to its attorney fees and costs incurred defending the *List v. Patten* lawsuit as well as its fees and costs in the instant action. Specifically, Hartford argues Patten retained permissive use of the company vehicle under *Wiglesworth v. Farmers Inc. Exch.*, 917 P.2d 288 (Colo. 1996) under any view of the facts, including Liberty's view that Patten "terminated" his employment several hours before the accident and was therefore no longer permitted to use the truck.

Liberty disagrees, asserting Pennsylvania law applies and arguing facts suggesting Patten used the vehicle after he "quit" and/or used it to help his wife change a flat tire constitute evidence of a "substantial deviation" from the terms of his permissive use under Pennsylvania law as will defeat summary judgment.  Alternatively, Liberty argues that should Colorado law apply, evidence that Patten used the vehicle after he "quit" his employment permits an inference of "theft" or "conversion" sufficient to defeat summary judgment under Colorado's initial permission rule.

My initial impression is that Hartford is correct regardless of whether Pennsylvania or Colorado law applies and that Liberty will be deemed Patten's primary insurer for damages and losses arising out of the February 5, 2002 accident. Given the nature of the Motion (one for summary judgment by a plaintiff against a defendant) and Liberty's view that the outcome turns largely on the choice of law issue, I will set it for oral argument. The parties should prepare their presentations with an eye to the following preliminary rulings and observations:

1. <u>Operative Facts</u>. According to Hartford, Patten returned home at 4 p.m. on Tuesday, February 5[th,] in his company truck. Patten and his son, Edwin Patten, Jr., also a Danella employee, had apparently had discussions about quitting their positions with the company. It is undisputed that Patten Jr. was his father's direct supervisor at Danella. Patten Jr. made a telephone call to the company at about 5 p.m., either threatening to quit or actually announcing that he and his father were quitting. According to Patten, he was not sure what the next day would bring, but because his wife was going to be caring for their infant granddaughter the next day, he decided to return his company vehicle to the lot that night so his son could pick him up rather than wake her at 4:00 in the morning to go with him. If the Pattens, indeed, were quitting, the truck would be back on the lot and if the Pattens were not quitting and were instead going out on the next day's job, Patten could simply take his own car in to start the day. (Patten Dep. at 27-30.)  Patten left in the truck at about 6:20 p.m.

At about 6:30 p.m., Patten received a call from his wife on his company cell phone telling him she had a flat tire in downtown Denver and needed help. Patten called his son (who was also his supervisor) and testified his son said to "go take care of her." En route to his wife's car, Patten was involved in a three-car accident with Cristina List and another vehicle.

Liberty does not dispute the chronology of events, but takes issue with the inferences to be drawn from them and their impact on the permissive use issue raised. According to Liberty, the 5:00 p.m. telephone call from Patten Jr. constituted a complete termination of the employment of both men effective immediately. As a result, Patten no longer had permission to use the truck and certainly did not have permission to take it to help his wife with her flat tire.[1] Liberty also disputes that Patten, Jr., was Patten's "supervisor" for purposes of binding the company or that Patten, Jr. had authority to give Patten specific permission to use the truck or not.

2.   There is no evidence in the record to support an inference of "theft" or "conversion" under Colorado law. Whatever the outcome on the conflict of law issue, the record in this case will not support an inference that Patten's deviation from his permitted use of the company vehicle rose to the level of theft or conversion. There is no evidence *other* than that Patten intended to return the

---

[1]   Liberty also cites to the fact that Patten was carrying a mattress in the back of the pick-up at the time of the accident as evidence Patten was using the truck to deliver the mattress somewhere, an additional unpermitted use.

truck and neither his use of the truck to help his wife or "to deliver" a mattress

supports any contrary inference.  Should it be determined after oral argument that

Colorado law applies, Liberty will be precluded at any trial from availing itself of

a defense to Colorado's initial permission rule based on a "deviation from the

permitted use ris[ing] to the level of theft or conversion."  *See Wiglesworth*, 917

P.2d at 291.

3.      Conflict of Law.  While I will allow argument on the conflict of law issue, my

inclination at this point is that Colorado law applies notwithstanding the fact that

the vehicle in question was licensed in Pennsylvania, had Pennsylvania tags, and

was only in Colorado temporarily until Danella could purchase a Colorado fleet.

Danella knew and intended that the vehicle would be driven on Colorado

highways; the accident occurred in Colorado and resulted in damage and injuries

to Colorado citizens and property; and given the underlying remedial policy in the

then-applicable Colorado Auto Accident Reparations Act (the "Act"), Colo. Rev.

Stat. § 10-4-701 *et seq.* (1994),[2] it seems likely Colorado law will be deemed to

---

[2]      The Act, creating a "no-fault" motor vehicle insurance scheme which has since
been repealed, was applicable at the time of the accident and governs the coverage issues raised.
*See* Colo. Rev. Stat. § 10-4-701 to 726 (1994) (repealed effective July 1, 2003).  As set forth in
*Wiglesworth*, the remedial underlying policy expressed by the General Assembly in adopting the
Act was "to avoid inadequate compensation to victims of automobile accidents; to require
registrants of motor vehicles in this state to procure insurance covering legal liability arising out
of ownership or use of such vehicles and also providing benefits to persons occupying such
vehicles *and to persons injured in accidents involving such vehicles*."  917 P.2d at 290 (quoting
Colo. Rev. Stat. § 10-4-702 (1994)(Legislative Declaration)(emphasis mine)).  Even though
Danella registered the subject vehicle in Pennsylvania, the Act applied to "[any] motor vehicle
on the public highways of this state" and to "[e]very owner of a motor vehicle . . . who
knowingly permits the operation of [such] vehicle[s] on the public highways of this state."  Colo.

apply.

4.    Even under Pennsylvania law, Patten's deviation from his permitted use is unlikely

to be deemed sufficiently  "substantial" to affect coverage, but the question is not

amenable to a determination on summary judgment.  Should Pennsylvania law be

deemed to apply, the ultimate outcome is likely to be the same, namely, that

Patten's actions on February 5, 2002 will not so deviate from his permitted use of

the Danella company vehicle as to void coverage under Danella's liability

insurance policy.  The modern trend of the caselaw in Pennsylvania is away from

the strict construction of "permissive use" applied in *Freshkorn v. Marietta*, 29

A.2d 15 (Pa. 1942).  Here, where the geographic deviation was only several miles

in a major metropolitan area, it is unlikely reasonable jurors will deem the

deviation "substantial" even under Pennsylvania law.  Even if jurors agree that

Patten "quit" at 5 p.m. on the day in question, it is clear Patten had to return the

truck to the lot somehow and absent any evidence to the contrary, it is unlikely

they will infer anything other than an intent to do so on Patten's part.  However,

the nature of the inquiry under Pennsylvania law suggests resolution of the

"substantial deviation" issue is one for the jury, and not the court on summary

judgment.  Accordingly, were Pennsylvania law to apply, the parties are likely

headed for trial.

5.    Absent a contractual provision or other authority mandating otherwise, I am

---

Rev. Stat. § 10-4-705(1).

<u>disinclined to award Hartford its attorney fees in the instant federal action</u>.

Based on the foregoing, Hartford's Motion for Summary Judgment Regarding

Permissive Use and Damages (Doc. 11) is GRANTED in part and set for ORAL

ARGUMENT.  Summary judgment is entered in favor of Patten on any defense by

Liberty that his conduct on February 5, 2002 rose to the level of "theft" or "conversion"

of the Danella company vehicle involved in the subject accident.  A date and time for oral

argument on the remaining issues raised in the parties' briefing on the Motion for

Summary Judgment will be set by separate Minute Order.  Should the parties wish a

referral to Magistrate Judge Shaffer for settlement or any other reason, they may contact

chambers and a referral will be issued.

Dated this 5th day of October, 2006.

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE
